**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**WILKERSON FRANCIS**
**INVESTMENTS, LLC,**

   **Plaintiff,**

**v.**

             **Civil Action No. 3:19cv582**

**AMERICAN ZURICH**
**INSURANCE COMPANY,**

   **Defendant.**

## MEMORANDUM OPINION

   This matter comes before the Court on Defendant American Zurich Insurance Company's

("Zurich") Motion to Dismiss (the "Second Motion to Dismiss"). (ECF No. 10.)  Plaintiff

Wilkerson Francis Investments, LLC ("Wilkerson") responded, (ECF No. 12), and Zurich

replied, (ECF No. 13).  This matter is ripe for disposition.  The Court dispenses with oral

argument because the materials before it adequately present the facts and legal contentions, and

argument would not aid the decisional process.  The Court exercises jurisdiction pursuant to 28

U.S.C. § 1332(a)(1).[1]  For the reasons that follow, the Court will deny the Second Motion to

Dismiss.

### I. Factual and Procedural Background

   In this insurance declaratory judgment action, Wilkerson, a "HVAC/Plumbing" limited

liability company, seeks a declaration that its business loss is covered by an insurance policy that

Zurich issued to Gemaire, a limited liability company, whose driver was involved in a collision

---

[1] "The district courts shall have original jurisdiction of all civil actions where the matter
in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is
between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).  As explained more fully
below, this action meets all elements for the Court to exercise diversity jurisdiction.

with one of Wilkerson's vehicles. (Am. Compl. ¶¶ 1, 36, ECF No. 8.)  The Court will first

present the factual background that led to this matter and will then discuss its procedural

background.

A.    **Factual Background**[2]

On August 25, 2016, Wilkerson "purchased a new 2016 Dodge RAM Promaster Truck

(the 'Vehicle') . . . for use in connection with its HVAC/Plumbing business." (*Id.* ¶ 8.)

Wilkerson "[o]utfitted [the Vehicle] with specialized racks, safety equipment for handling

hazardous materials . . . and other special features," so that the Vehicle "was fully operational

and immediately ready to be deployed in [Wilkerson's] business." (*Id.* ¶ 9.)

Wilkerson purchased the Vehicle because its "business was growing." (*Id.* ¶ 10.)

Specifically, Wilkerson's manager "had secured contracts to install new HVAC systems in

residential apartment complexes in Henrico County pursuant to a Dominion Virginia Power

rebate program." (*Id.*)  December 24, 2016, approximately four months after Wilkerson

purchased the Vehicle, represented "[t]he last day to perform work under [the] Dominion Power

rebate program." (*Id.*)  Wilkerson's "main contract was with the multi-unit Gerwyn Manor

Apartments in Sandston, Virginia." (*Id.* ¶ 11.)  On August 29, 2016, four days after purchasing

the Vehicle, Wilkerson submitted an estimate to the manager of Gerwyn Manor in the amount of

$200,000, "for the installation of new HVAC systems in 200 units at the Gerwyn Manor." (*Id.*)

Wilkerson asserts that "[w]ith both the . . . Vehicle and [Wilkerson's other] [t]ruck . . .

in[]service, [Wilkerson] easily would have been able to install new HVAC systems in all 200

---

[2] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For the purpose of the Rule 12(b)(6) Motion to Dismiss, "a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)).

2

Gerwyn Manor units prior to December 24, 2016," the deadline to complete work for the Dominion rebate program. (*Id.* ¶ 12.) Wilkerson also planned to use the Vehicle for "other work that was available to [Wilkerson], including HVAC system replacement at Heritage Pointe Apartments (225 units) and Culpeper Farms Apartments (180 units)." (*Id.* ¶ 13.)

Although Wilkerson planned to use the Vehicle to complete this work, on October 24, 2016, nearly two months after purchasing the Vehicle, a truck "owned and carelessly operated by [a driver for] Gemaire" hit the Vehicle. (*Id.* ¶ 14.) Wilkerson asserts that "Gemaire admitted fault." (*Id.*) Wilkerson maintains that "[a]t the time of the accident," Zurich insured Gemaire's truck. (*Id.* ¶ 15.) As a result of the accident, the Vehicle "sustained substantial damage" and "was rendered inoperable and unusable in [Wilkerson's] business." (*Id.* ¶ 16.) "On or about December 2, 2016, Zurich (through its claims services provider . . . [)] tendered a check to [Wilkerson] in the amount of $10,869.22 for the repair of the Vehicle." (*Id.* ¶ 18.)

On December 13, 2016, seven weeks after the accident between Gemaire and the Vehicle occurred, the repairs to the Vehicle were completed. (*Id.* ¶ 19.) "The Vehicle was out-of-service the entire time between October 24, 2016 and December 13, 2016." (*Id.* ¶ 20.) Wilkerson maintains that "[b]ecause of the nature of the Vehicle . . . customer demands and governmental regulations, [Wilkerson] could not have secured another vehicle to replace the Vehicle" during this time. (*Id.* ¶ 21.) Wilkerson asserts that "[a]s a direct and proximate result of Gemaire's negligence and the loss of use of the Vehicle, [Wilkerson] suffered a significant loss of business." (*Id.* ¶ 22.) Specifically, Wilkerson estimates that it suffered $80,851.67 in lost business based on its manager's "experience, including his historic sales and success as an HVA[C]/Plumbing contractor in Henrico County, the actual performance of [Wilkerson's other trucks] between October 24, 2016, and December 13, 2016, and the scope of the Gerwyn Manor

3

project." (*Id.* ¶ 24.) To arrive at its final estimate, Wilkerson also subtracted "actual expenses" it would have incurred from the revenue it expected the Vehicle to generate during the time it was being repaired. (*Id.*)

Wilkerson avers that its "business loss is covered under the policy issued to Gemaire by Zurich" and that it "duly submitted a claim to Zurich for the loss of business caused by Gemaire." (*Id.* ¶¶ 27–28.) On January 16, 2017, nearly three months after the accident, in an effort to recover its business losses, Wilkerson sent a letter to Zurich's claims services provider and included "invoices, detailed financial statements and other information that confirmed its business loss to a reasonable degree of certainty." (*Id.* ¶ 29.)

Approximately five months later, on "May 10, 2017, Zurich's legal counsel advised [Wilkerson] that Zurich rejected [Wilkerson's] claim because it was 'speculative in light of the fact that [Wilkerson's] business was established in 2016 and fluctuates between "high" and "low" seasons.'" (*Id.* ¶ 30.) "Zurich stated that it was 'unable to reach an accurate figure confirming [Wilkerson's] alleged lost profits in accordance with the established requisite standards that have been explained by Virginia law.'" (*Id.*)

### B.   Procedural Background

Wilkerson originally filed suit in this Court naming only Zurich and seeking a declaration that the policy between Zurich and Gemaire covered Wilkerson's business loss. (Compl. 1, ECF No. 1.) Zurich moved to dismiss the Complaint (the "First Motion to Dismiss"). (ECF No. 4.) In response to the First Motion to Dismiss, Wilkerson filed the Amended Complaint as of right.[3] (ECF No. 8.)

---

[3] Because Wilkerson filed the Amended Complaint as of right and the Amended Complaint supersedes the original Complaint, the Court denied the First Motion to Dismiss. (Oct. 1, 2019 Order 2, ECF No. 9.)

4

In the Amended Complaint, Wilkerson sought the same declaratory judgment of coverage against Zurich and added a negligence claim against Gemaire. (*See* Am. Compl. 6–7.) After Wilkerson failed to timely serve Gemaire, the Court dismissed without prejudice the Amended Complaint against Gemaire. (May 13, 2020 Order 3, ECF No. 16.) Therefore, only the declaratory judgment count against Zurich remains before the Court. The Court now turns to the merits of the instant Motion to Dismiss.

## II. Standard of Review: Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context specific and

5

requires "the reviewing court to draw on its judicial experience and common sense." *Francis*,
588 F.3d at 193. The Court must assume all well pleaded factual allegations to be true and
determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to
an entitlement to relief." *Iqbal*, 556 U.S. at 678–79; *see also Kensington*, 684 F.3d at 467
(finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of
the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of
the plaintiff'" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)). This principle applies only to
factual allegations, however, and "a court considering a motion to dismiss can choose to begin
by identifying pleadings that, because they are no more than conclusions, are not entitled to the
assumption of truth." *Iqbal*, 556 U.S. at 679.

### III. Analysis

In the Second Motion to Dismiss, Zurich moves to dismiss the declaratory judgment
claim against it on four grounds: (1) Wilkerson lacks standing to bring this claim against Zurich
because Virginia law does not allow direct actions against insurers; (2) the Court should exercise
its discretion and abstain from ruling on the declaratory judgment claim; (3) the applicable
statute of limitations bars Wilkerson's claim; and, (4) Wilkerson incorrectly named Zurich. The
Court will address and deny each ground in turn.

 **A.** **Because Federal Law Governs Wilkerson's Ability to Bring This Declaratory
Judgment Action in Federal Court and Wilkerson Meets Each of the Three
Elements of Article III Standing, the Court Will Deny the Virginia Law
Standing Argument**

The Court will first address whether Wilkerson has standing to pursue this declaratory
judgment action. Because federal law governs Wilkerson's standing to bring this action before
this Court and Wilkerson meets all three elements of Article III standing, the Court will deny
Zurich's argument that Wilkerson lacks standing.

6

### 1.   Legal Standard:  Federal Law Standing, Generally

Article III, Section 2, clause 1 of the Constitution limits federal court jurisdiction to

"Cases" and "Controversies."  U.S. CONST. art. III, § 2, cl. 1.  As the Supreme Court has

explained, an "essential and unchanging part of the case-or-controversy requirement" is that a

plaintiff must establish Article III standing to sue.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

(1992).  In *Spokeo, Inc. v. Robins*, the Supreme Court reiterated that, in order to establish

standing, a plaintiff must have:  "(1) suffered an injury in fact,[4] (2) that is fairly traceable to the

challenged conduct of the defendant;[5] and[,] (3) that is likely to be redressed by a favorable

judicial decision.[6]"  136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61).

As the party invoking federal jurisdiction, Wilkerson bears the burden of properly

alleging standing.  *Lujan*, 504 U.S. at 560.  "Where, as here, a case is at the pleading stage, the

plaintiff must 'clearly . . . allege facts demonstrating' each element."  *Spokeo*, 136 S. Ct. at 1547

(quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

### 2.   Legal Standard:  Standing to Bring a Declaratory Judgment Action

The Declaratory Judgment Act states that "[i]n the case of actual controversy within its

jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may

declare the rights and other legal relations of any interested party seeking such declaration,

---

[4] An injury in fact must be both "(a) concrete and particularized;" and, "(b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted).

[5] To show a causal connection, "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

[6] A party may establish the third element of standing by showing "that the injury will be [likely] 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43). A plaintiff cannot have standing where redressability of an injury is merely "speculative." *Id.*

7

whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Federal standards

guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is

under the court's diversity jurisdiction." *White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,

913 F.2d 165, 167 (4th Cir. 1990) (citation omitted); *Miller v. Augusta Mut. Ins. Co.*, 157 Fed.

App'x 632, 637 (4th Cir. 2005) (unpublished) (stating that whether the plaintiff "has standing to

maintain [a] declaratory judgment action is a question that must be resolved under well-

established principles of federal law").

The Court will apply the general test for establishing standing under federal law when

considering whether Wilkerson has standing to pursue its declaratory judgment under the

Declaratory Judgment Act. *See Lott v. Scottsdale Ins. Co.*, 811 F. Supp. 2d 1224, 1228–29 (E.D.

Va. Sept. 14, 2011) (applying the general test for Article III standing to determine whether

plaintiffs could maintain a declaratory judgment suit).

### 3.    Analysis: Under the Applicable Federal Law, Wilkerson Has Alleged Sufficient Facts to Establish That It Has Standing To Bring This Declaratory Judgment Action in Federal Court

When looking to the applicable federal law, Wilkerson has alleged sufficient facts to

establish that it has Article III standing to bring this declaratory judgment action in federal court.

The Court will first address why federal law applies. It will then address the three elements of

Article III standing under federal law.

### a.    Federal Law Governs This Declaratory Judgment Action

Zurich contends that because Virginia law does not permit direct actions against insurers,

Wilkerson lacks standing to pursue this action.[7]  (*See* Mem. Supp. Second Mot. Dismiss 4, ECF

---

[7] A direct action "is an action by an injured party against an insurer to recover for damages caused not by the insurer, but by its insured who is not joined in the action." *U.S. Home Corp. v. Nationwide Mut. Fire Ins. Co.*, No. 1:15cv1464, 2016 WL 958348, at * 4 (E.D. Va. Mar. 8, 2016) (citing *Eltsefon v. State Farm Mut. Auto. Ins. Co.*, 826 F. Supp. 2d 922, 925

No. 11 (citation omitted).) However, federal law, not Virginia law, governs Wilkerson's ability to bring this declaratory judgment action before this Court.

Although Wilkerson brings this matter invoking the Court's diversity jurisdiction, the Fourth Circuit has recognized that "[f]ederal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity jurisdiction." *White*, 913 F.2d at 167 (citations omitted). Therefore, even if Wilkerson could not bring this declaratory judgment action in a Virginia state court,[8] as long as it meets the three elements of Article III standing, Wilkerson could bring this action in federal court. *See Lott*, 811

_____

(E.D. Va. 2011)). "[C]ourts have routinely limited 'direct action' to cases where a party suffers injuries or damage due to a third party's actions and brings suit against the tortfeasor's liability insurer without joining the tortfeasor or first obtaining a judgment against him." *Id.* (citation omitted).

To determine whether an action is a direct action, the Court "must look to the status of the defendant insurer when determining whether a plaintiff's claims are 'direct actions.'" *Id.* (citing *Porter v. Buck*, No. 7:14cv176, 2014 WL 3563415, at *4 (W.D. Va. July 18, 2014)). If the plaintiff brings suit against the insurer for the *insurer's* conduct, then the action does not constitute a direct action. *See id.* at *4–*5. If the plaintiff names *both* the insured *and* the insured's insurer, then the action does not constitute a direct action. *See id.*

However, if the plaintiff brings a claim against the insurer based on the *insured's* conduct, then the action becomes a direct action. *Id.* Although Wilkerson originally named both Gemaire and Zurich as defendants in the Amended Complaint, the Court has subsequently dismissed the case as to Gemaire because Wilkerson failed to serve it within the applicable time period. (*See* Am. Compl. 1; May 13, 2020 Order 2.) Therefore, Zurich, Gemaire's insurer, remains as the sole defendant in this action. Because Wilkerson seeks a declaration that Zurich must cover Wilkerson's business loss based on Gemaire's conduct and not based on Zurich's own conduct, this action is a direct action. *See U.S. Home Corp.*, 2016 WL 958348, at *4 (defining direct action as "an action by an injured party against an insurer to recover for damages caused not by the insurer, but by its insured who is not joined in the action").

[8] The Fourth Circuit has recognized that "[w]hile Virginia law prohibits third-parties from bringing direct actions against an insurer before judgment has been entered, the Virginia Supreme Court has permitted (albeit without discussion of the standing question) an injured party to bring a declaratory judgment action against the tortfeasor's insurer before obtaining a judgment against the tortfeasor." *Miller*, 157 Fed. App'x at 636 n. 5 (citing *Craig v. Dye*, 526 S.E.2d 9, 10 (Va. 2000); *USAA Cas. Ins. Co. v. Hensley*, 465 S.E.2d 791, 793 (Va. 1996); *Providence Washington Ins. Co. v. Gheen*, 439 S.E.2d 333, 333 (Va. 1994)). Because federal law governs whether Wilkerson has standing to pursue this action before this Court, the Court need not decide whether Wilkerson could bring this action in a Virginia state court.

F. Supp. 2d at 1228–29 (applying the federal test for standing to determine whether a plaintiff had standing to maintain a declaratory judgment action in federal court).

The Court, therefore, turns to whether Wilkerson has alleged sufficient factual allegations, that when taken as true, satisfy the three elements necessary to establish Article III standing. It has done so.

### b. Wilkerson Has Alleged Sufficient Facts to Establish Article III Standing

To establish Article III standing under federal law, a plaintiff must allege sufficient facts to meet three elements: (1) an injury in fact; (2) the injury must be "fairly traceable to the challenged conduct of the defendant;" and, (3) a favorable judicial decision must be likely to redress the injury. *Spokeo*, 136 S. Ct. at 1547; *see also Lott*, 811 F. Supp. 2d at 1229 (identifying the same three elements in determining whether a plaintiff has standing to pursue a declaratory judgment). Because the Court decides Wilkerson's standing to bring this action on a motion to dismiss, Wilkerson must "clearly . . . allege facts demonstrating each element." *Spokeo*, 136 S. Ct. at 1547 (internal quotation marks and citations omitted).

First, Wilkerson has alleged sufficient facts to establish that it has suffered an injury in fact. *See id.* Here, Wilkerson states that it suffered business losses when the Vehicle could not function after a driver for Gemaire hit it and rendered the Vehicle "inoperable." (Am. Compl. ¶¶ 16, 23–24.) Wilkerson also says that after it made a claim, that included supporting documentation, for coverage of these business losses to Zurich, Gemaire's insurer, Zurich denied Wilkerson's claim as "speculative." (*Id.* ¶¶ 28–30.) These business losses, and Zurich's refusal

to cover them, constitute an injury in fact. Therefore, Wilkerson has alleged sufficient facts to meet the first element of standing, injury in fact.[9] *Spokeo*, 136 S. Ct. at 1547.

Second, Wilkerson must show that its injury is "fairly traceable" to Zurich's actions. *See id.* Here, Wilkerson alleges that a driver for Gemaire hit the Vehicle. (Am. Compl. ¶ 14.) Wilkerson asserts that Zurich insured the vehicle driven by the Gemaire driver. (*Id.* ¶ 15.) Wilkerson also states that although Zurich "tendered a check to [Wilkerson] . . . for the repair of the Vehicle," (*id.* ¶ 18), Zurich has rejected Wilkerson's claims for business losses, even though Wilkerson has submitted documentation to support its claim, (*id.* ¶¶ 28–30). This sequence of events plainly shows that although Zurich did not cause the business losses by damaging the Vehicle, it ensured that Wilkerson will not recover those losses by rejecting Wilkerson's claim. Therefore, Wilkerson has alleged sufficient facts to meet the second element of standing, that the injury be "fairly traceable" to the defendant's actions. *See Spokeo*, 136 S. Ct. at 1547.

Third, and finally, Wilkerson must show that a favorable judicial decision could likely redress its injury. *See id.* Here, Wilkerson seeks "a declaration that its loss is covered by the policy" between Zurich and Gemaire. (Am. Compl. 8.) If the Court were to grant Wilkerson's requested relief, Wilkerson may be able to recover its business losses. This would redress the injury it suffered when Zurich rejected its claims for businesses losses after its insured, Gemaire,

---

[9] An injury in fact must be both "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). Although Zurich suggests that Wilkerson's claim is hypothetical because it has not yet obtained a judgment against Gemaire, (Mem. Supp. Second Mot. Dismiss 6), Wilkerson states that Gemaire has admitted fault for the accident that gave rise to the business loss, (Am. Compl. ¶ 14). Wilkerson also asserts that Zurich, through its claims adjustor, has tendered payment to Wilkerson for the Vehicle's repairs. (*Id.* ¶ 18.) Similarly, Wilkerson alleges that it has made a claim for business losses to Zurich and that Zurich rejected that claim as "speculative." (*Id.* ¶¶ 29–30.) Based on these allegations, the Court makes the reasonable inferences that Zurich insures Gemaire, that Zurich has accepted Gemaire's admitted fault for the accident, and that Zurich has assumed liability for the losses Wilkerson sustained in the accident. Because Zurich has already rejected Wilkerson's claim for business losses, Wilkerson's injury is both "concrete and particularized" and "actual." *Lujan*, 504 U.S. at 560.

hit the Vehicle and rendered it inoperable. Wilkerson therefore has alleged sufficient facts to meet the third element of standing, that a favorable judicial decision would likely redress its injury. *See Spokeo*, 136 S. Ct. at 1547.

Because Wilkerson has alleged sufficient facts to meet each element of Article III standing under the applicable federal law, the Court will deny the Second Motion to Dismiss on Zurich's first ground for relief: that Wilkerson lacks standing to maintain this suit under Virginia law. The Court now turns to Zurich's second ground for relief: that the Court exercise its discretion to not accept jurisdiction over this matter.

**B.** **Because Wilkerson Has Alleged Sufficient Facts to Meet Each of the Three Elements for a Court to Consider a Declaratory Judgment Action, the Court Will Exercise its Discretion to Consider This Matter**

Having determined that Wilkerson has standing to pursue this action, the Court now turns to Zurich's second ground for relief in the Second Motion to Dismiss: that the Court should exercise its discretion and decline to consider this declaratory judgment action. Because Wilkerson has alleged sufficient facts to meet each of the three elements for a court to consider a declaratory judgment action, the Court will deny the Second Motion to Dismiss on this ground as well.

**1.** **Legal Standard: Requirements for a Court to Consider a Federal Declaratory Judgment Action**

The United States Court of Appeals for the Fourth Circuit has identified three elements which guide when a federal court may properly consider a declaratory judgment:

(1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court possesses an independent basis for jurisdiction over the parties (e.g.,

federal question[10]or diversity jurisdiction[11]); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (citations omitted).

Even if a matter meets all three elements, a district court may exercise its discretion and abstain from ruling on a declaratory judgment action. *Id.* at 594 (stating that "[i]f a district court possesses declaratory judgment jurisdiction, it may nonetheless, in the exercise of its discretion, decline to entertain the action"). This discretion, however, has limits. A "district court must have 'good reason' for declining to exercise its declaratory judgment jurisdiction." *Id.* (citation omitted). A "district court is obliged to rule on the merits of a declaratory judgment action when declaratory relief 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings.'" *Id.* (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

### 2.   Analysis: Because Wilkerson Meets Each of the Three Elements Identified by the Fourth Circuit, the Court Will Exercise its Discretion to Consider this Matter

For the Court to consider Wilkerson's declaratory judgment request under the Declaratory Judgment Act, Wilkerson must allege sufficient facts to meet each of the three elements identified by the Fourth Circuit. Here, Wilkerson has done so.[12]

---

[10] To exercise federal question jurisdiction, the plaintiff must assert a cause of action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Wilkerson does not seek to invoke the Court's federal question jurisdiction.

[11] To exercise diversity jurisdiction, the plaintiff must show "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). In a declaratory judgment action "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (citations omitted). Wilkerson seeks to invoke the Court's diversity jurisdiction. (Am. Compl. ¶ 6.)

The first factor requires Wilkerson to show "an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Volvo Constr. Equip. N. Am., Inc.*, 386 F.3d at 592 (internal quotation marks and citations omitted). As to this element, Wilkerson alleges that the insurance policy between Gemaire and Zurich covers the business loss that Wilkerson sustained as a result of the accident between Gemaire and the Vehicle. (Am. Compl. ¶¶ 14–15, 27.) Wilkerson asserts that it sent a letter and supporting documentation to Zurich's claims adjustor to support its business loss claim, but that Zurich rejected the claim as "speculative." (*Id.* ¶¶ 29–30.) These allegations plausibly show that an "actual controversy" exists between Wilkerson and Zurich. *Volvo Constr. Equip. N. Am., Inc.*, 386 F.3d at 592. Similarly, because Zurich has already rejected Wilkerson's claim, these allegations also show a controversy "of sufficient immediacy and reality . . . [that] warrant issuance of a declaratory judgment." *Id.* Therefore, Wilkerson meets the first element for the Court to consider this declaratory judgment action.

The second factor requires Wilkerson to alleges facts that show that "the court possesses an independent basis for jurisdiction over the parties." *Id.* Wilkerson seeks to invoke the Court's diversity jurisdiction. (Am. Compl. ¶ 6.) In support, Wilkerson states that it constitutes a Virginia limited liability company and that all of its "members are citizens of Virginia who reside within the Richmond Division of the United States District Court for the Eastern District of Virginia." (*Id.* ¶¶ 1–2.) It also asserts that Zurich "is an Illinois corporation, with its headquarters and principal place of business in Schaumberg, Illinois." (*Id.* ¶ 4.) Finally,

---

[12] Although Wilkerson argues that federal law governs whether it has standing to pursue this declaratory judgment action and cites to *Volvo Construction Equipment of North America, Inc.*, (Resp. Second Mot. Dismiss 5), neither party addresses the three elements identified by the Fourth Circuit to maintain a declaratory judgment suit in federal court. *See Volvo Constr. Equip. N. Am., Inc.*, 386 F.3d at 592. Because these three elements govern whether the Court may properly consider this declaratory judgment action, the Court will consider them here.

Wilkerson avers that Gemaire "is a Delaware limited liability company" and that "[n]one of Gemaire's members [are] a citizen of Virginia." (*Id.* ¶ 5.) Wilkerson seeks a declaratory judgment that the policy Zurich issued to Gemaire covers Wilkerson's business losses of $80,851.67. (*Id.* ¶¶ 36–37.)

For the Court to exercise its diversity jurisdiction over this matter, complete diversity of citizenship must exist between the parties and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a)(1). In a declaratory judgment action "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Francis*, 709 F.3d at 367 (citations omitted). Here, complete diversity exists between Wilkerson, a citizen of Virginia, and Zurich, a citizen of Illinois and Delaware.[13] Similarly, the $80,851.67 business loss that Wilkerson seeks from Zurich, (Am. Compl. ¶¶ 36–37), exceeds the threshold $75,000 requirement. Therefore, Wilkerson has plausibly alleged sufficient facts to meet both elements to establish diversity jurisdiction and the Court has an "independent basis for jurisdiction over

---

[13] Section 1332(c)(1)(A) states, in pertinent part that:

> a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance . . . to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of--
> (A) every State and foreign state of which the insured is a citizen;

28 U.S.C. § 1332(a)(1)(C). Because this action is a direct action against an insurer, Zurich also assumes the citizenship of its insured, Gemaire. *Id.*

Gemaire is a limited liability company. (Am. Compl. ¶ 5.) A limited liability company obtains its citizenship from the citizenship of its members. *Central W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citation omitted). Although Wilkerson does not allege the citizenship of each of Gemaire's members, it asserts that "[n]one of Gemaire's members is a citizen of Virginia." (Am. Compl. ¶ 5.) For purposes of the instant Motion to Dismiss, the Court must "accept as true all of the factual allegations contained in the complaint." *Kensington*, 684 F.3d at 467 (citation omitted). Therefore, for the purposes of deciding the Second Motion to Dismiss, the Court will presume that Gemaire is a citizen of Delaware and that complete diversity of citizenship exists. The Court notes, though, that this general allegation may not suffice to show jurisdiction at a later stage of the litigation.

the parties." 28 U.S.C. § 1332(a)(1); *Volvo Constr. Equip. N. Am., Inc.*, 386 F.3d at 592.
Wilkerson has satisfied the second element for the Court to consider this declaratory judgment
action.

Finally, the third factor requires Wilkerson to allege sufficient facts to show that the
Court "does not abuse its discretion in its exercise of jurisdiction." *Volvo*, 386 F.3d at 592. The
Fourth Circuit has recognized that a district court has discretion to consider a declaratory
judgment action and that to abstain from acting over a declaratory judgment action, the district
court must have "good reason" to do so. *Id.* at 594. A district court should exercise jurisdiction
over a declaratory judgment when "declaratory relief will serve a useful purpose in clarifying
and settling the legal relations in issue, and will terminate and afford relief from the uncertainty,
insecurity, and controversy giving rise to the proceedings." *Id.* (internal quotation marks and
citations omitted).

Wilkerson states that Gemaire has admitted fault for the accident that gave rise to the
business loss. (Am. Compl. ¶ 14.) Wilkerson also asserts that Zurich, through its claims
adjustor, has tendered payment to Wilkerson for the Vehicle's repairs. (*Id.* ¶ 18.) Similarly,
Wilkerson alleges that it has made a claim for business losses to Zurich and that Zurich rejected
that claim as "speculative." (*Id.* ¶¶ 29–30.) Therefore, granting or denying Wilkerson's
requested declaratory relief would "serve a useful purpose in clarifying and settling the legal
relations in issue," specifically whether the policy between Zurich and Gemaire covers the
business losses Wilkerson sustained. *Volvo Constr. Equip. N. Am., Inc.*, 386 F.3d at 594. The
declaratory judgment "will [also] terminate and afford relief from the uncertainty, insecurity, and
controversy giving rise to the proceedings," because the parties would necessarily know whether
the policy affords coverage for Wilkerson's business losses. *Id.* For these reasons, the Court

will exercise its discretion to accept jurisdiction over this matter. Wilkerson, therefore, plausibly alleges sufficient facts to meet the third, and final, element for the Court to consider this declaratory judgment action, that the Court "does not abuse its discretion in its exercise of jurisdiction." *Id.* at 592.

Because Wilkerson has alleged sufficient facts to meet each of the three necessary elements for the Court to consider this declaratory judgment action, the Court will exercise its jurisdiction. The Court, therefore, denies the Second Motion to Dismiss on Zurich's second ground for relief. The Court now turns to the third ground for relief, whether the applicable statute of limitations bars this action.

**C.** **Because the Five-Year Statute of Limitations Applies, Wilkerson Timely Brought This Declaratory Judgment Action**

As the third ground of its Motion to Dismiss, Zurich contends that the applicable statute of limitation bars this action. (Mem. Supp. Second Mot. Dismiss 8.) Zurich maintains that the two-year personal injury statute of limitation, not the five-year injury to property statute of limitation, applies because Wilkerson seeks to recover business losses, not money for damage caused to the Vehicle. (*Id.* 8–9.) Because the business losses arose from the damage caused to the Vehicle, the five-year property statute of limitations applies and Wilkerson timely brought this action. Therefore, the Court will deny the Second Motion to Dismiss on this ground as well.

**1.** **Legal Standard: Virginia Statute of Limitations**

Although the Court utilizes federal law to determine whether it may exercise jurisdiction over Wilkerson's declaratory judgment action, it turns to Virginia law to determine the applicable statute of limitations. "Under Virginia law, it is well established that the form of litigation does not affect the analysis of the statute of limitations." *Manotas v. Ocwen Loan Servicing, LLC*, 794 Fed. App'x 259, 263 (4th Cir. 2019) (unpublished) (citing *Kappa Sigma*

17

*Fraternity, Inc. v. Kappa Sigma Fraternity*, 587 S.E.2d 701, 707 (Va. 2003)). "If the law were otherwise, the statute of limitations could be rendered meaningless merely by the filing of a declaratory judgment action." *Id.* (quoting *Bd. of Supervisors v. Thompson Assocs.*, 393 S.E.2d 201, 204 (Va. 1990)).

Virginia law provides for a two-year statute of limitations for personal injuries and a five-year statute of limitations for injuries to property. *Compare* Va. Code § 8.01-243(A) (stating that "every action for personal injuries, whatever the theory of recovery . . . shall be brought within two years after the cause of action accrues"); *with* Va. Code § 8.01-243(B) (stating that "[e]very action for injury to property . . . shall be brought within five years after the cause of action accrues").

To determine which statute of limitations applies, the Court looks to the "object of the litigation and the substance of complaint, not the form in which the litigation is filed." *Manotas*, 794 Fed. App'x at 263 (quoting *Kappa Sigma Fraternity, Inc.*, 587 S.E.2d at 707). The Supreme Court of Virginia has explained that the five-year statute of limitations applies to "wrong[s] to property, real or personal, or which grow out of breach of contract, but not for wrongs done to the person or reputation, or any purely personal wrong, apart from property or contract."[14]

---

[14] In *Worrie*, when deciding which statute of limitations applied, the Virginia Supreme Court considered, as the determinative factor, whether the cause of action survived the plaintiff's death. 95 S.E.2d at 195. The Virginia legislature has since amended the statutes governing these statutes of limitations and survivability no longer affects the applicable statute of limitations. *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 320 (Va. 2014). Even so, the Virginia Supreme Court has recognized that the *Worrie* court's analysis "to determine whether an alleged injury is to property or to the person remains relevant and binding." *Id.* That is what the Court analyzes today.

*Worrie v. Boze*, 95 S.E.2d 192, 195–96 (Va. 1956) (citations omitted), *abrogated on other grounds by Station #2, LLC v. Lynch*, 695 S.E.2d 537 (Va. 2010)).[15]

> **2.    Because Wilkerson's Claim for Business Losses Arises From the Vehicle's Damage Sustained in the Accident with Gemaire, the Five-Year Statute of Limitations Applies**

Zurich contends that because Wilkerson seeks business losses its declaratory judgment action is governed by the two-year personal injury statute of limitations. However, because these business losses arise from the damage caused to the Vehicle during the accident between Gemaire and Wilkerson, the five year statute of limitations applies.

Under Virginia law the Court must consider "the object of the litigation and the substance of the complaint" to determine the applicable statute of limitations. *Monotas*, 794 Fed. App'x at 263. In *Worrie*, the Virginia Supreme Court considered a case in which the plaintiffs, owners of a dance studio, claimed that they suffered business losses when the defendants, former employees, breached the restrictive covenants of their employment contracts by creating a new dance studio. 95 S.E.2d at 194. The defendants asserted that because "the plaintiffs' action is not for direct damage to their property or estate, but is merely a claim for damages for being deprived of additional profits," the shorter statute of limitations for personal injury applied, not the longer statute of limitations for injuries to property or to contracts. *Id.* at 196. However, the Virginia Supreme Court rejected that contention and concluded that the longer statute of limitations applicable to injuries to property and to contracts applied because "the wrong done and damage done are directed to the estate or property of the plaintiffs and not to them personally." *Id.*

---

[15] The Virginia Supreme Court has explained that its decision in *Station #2* did not affect the portion of *Worrie* discussing the applicable statute of limitations. *See Dunlap*, 754 S.E.2d at 320 n. 7.

19

Wilkerson asserts that Gemaire, Zurich's insured, hit the Vehicle, causing "substantial damage" and rendering the Vehicle "inoperable." (Am. Compl. ¶¶ 14–15.) Because Wilkerson had outfitted the Vehicle with specialized equipment, it "could not have secured another vehicle to replace the Vehicle" during the time that the Vehicle was being repaired. (*Id.* ¶ 21.) Therefore, Wilkerson maintains that it suffered $80,851.67 in lost profits during the seven-weeks that it could not use the Vehicle. (*Id.* ¶¶ 22–24.) Wilkerson now seeks a declaration that the policy between Zurich and Gemaire covers these business losses. (*Id.* ¶¶ 36–37.) The accident occurred on October 24, 2016, and Wilkerson filed suit nearly four years later on August 13, 2019. (*See id.* ¶ 14; Compl. 1.)

Looking to the "object of the litigation and the substance of the complaint," it becomes clear that Wilkerson's request for business losses arises from the damage to the Vehicle, its property. *See Manotas*, 794 Fed. App'x at 263. *Worrie* is instructive here. Its analysis of the statute of limitations issues remains good law. Similar to the plaintiffs in *Worrie*, Wilkerson seeks to recover lost profits. *See Worrie*, 95 S.E.2d at 196; (Am. Compl. ¶¶ 36–37). In *Worrie*, the Virginia Supreme Court concluded that the longer statute of limitations applicable to injuries to property applied because the plaintiffs' "claim is that their business or estate, their property in the contract with [the defendant], was destroyed by reason of the acts of the defendants." 95 S.E.2d at 196. Wilkerson claims that Gemaire harmed its business by causing it to lose profits because the Vehicle could not function after the accident with Gemaire that left the Vehicle "inoperable" mirror those in the *Worrie* case. (Am. Compl. ¶¶ 14–15.) As in *Worrie*, "the wrong done and damage done are directed to the . . . property of [Wilkerson] and not to [it] personally." *Worrie*, 95 S.E.2d at 196. For this reason, the five-year statute of limitations applicable to injuries to property applies to this action. Because Wilkerson brought suit within

20

four years of the accident, it timely filed.[16]  The Court will deny the Second Motion to Dismiss

on this ground as well.  The Court now turns to the final ground asserted in the Second Motion to

Dismiss, that the Court must dismiss this action because Wilkerson incorrectly named Zurich in

the Amended Complaint.

### D.     Although Wilkerson Incorrectly Named Zurich, the Court Will Deny the Second Motion to Dismiss On This Ground

As the final argument in the Second Motion to Dismiss, Zurich contends that the Court

must dismiss this action because Wilkerson incorrectly named Zurich in the Amended

Complaint.  The Court will deny the Second Motion to Dismiss on this basis as well.

Zurich asserts that its "proper name is Zurich American Insurance Co., not American

Zurich Insurance Co." (Mem. Supp. Second Mot. Dismiss 11.)  Zurich maintains that because it

raised this ground in the First Motion to Dismiss, Wilkerson was on notice of this deficiency and

---

[16] Zurich contends that Wilkerson's request for business losses is similar to an injured plaintiff's request for lost income in a personal injury suit. (Mem. Supp. Second Mot. Dismiss 9.)  Looking to the Virginia Model Jury Instructions for the types of damages that an injured plaintiff may recover, Zurich argues that this type of recovery suggests an action for personal injury. (*Id.* (citing Va. Model Jury Instr. 9.000).)  Zurich further contends that because Wilkerson does not seek damages for the Vehicle's repairs, the business losses must arise not from the damage done to the Vehicle, but to the injury inflicted to Wilkerson personally. (*Id.* 10.)  The Court notes that Zurich has already paid Wilkerson for the damage done to the Vehicle, meaning that Zurich's argument likely fails.  Also, when looking to the "object of the litigation and the substance of the complaint" and comparing this case to that considered by the Virginia Supreme Court in *Worrie*, it becomes clear that Wilkerson's request for business losses arises from the damage done to the Vehicle, its property, not to it personally. *Worrie*, 95 S.E.2d at 195–96; *Manotas*, 794 Fed. App'x at 263.

Zurich also contends that as a corporation Wilkerson could be subject to Virginia's personal injury two-year statute of limitations. (Mem. Supp. Second Mot. Dismiss 8 (citations omitted).)  Because the Court concludes that the five-year statute of limitations for injury to property applies and that Wilkerson has timely brought this action, the Court need not reach the issue of whether Wilkerson, as a limited liability company, could be subject to a statute of limitations applicable to *personal* injuries.

21

failed to correct it in filing the Amended Complaint.[17]  (Reply Second Mot. Dismiss 8, ECF No. 13.)  Zurich cites Federal Rule of Civil Procedure 12(b)(7) in support of this contention.

In response, Wilkerson states that "Zurich offers no evidence to support its contention, but the simple solution, in the interest of justice, is to correct the misnomer."  (Resp. Second Mot. Dismiss 7, ECF No. 12.)

Federal Rule of Civil Procedure 12(b)(7) allows a court to dismiss an action for "failure to join a party under Rule 19."  Fed. R. Civ. P. 12(b)(7).  The Rule does not appear to apply to a situation, such as this, when a plaintiff simply incorrectly names a party.  Although the Court cautions Counsel for Plaintiff that because Zurich raised this issue in the First Motion to Dismiss, (see Mem. Supp. First Mot. Dismiss 8, ECF No. 5), he should have correctly named Zurich in the Amended Complaint, the interests of justice do not weigh in favor of dismissing the action on this ground.  Rather, Wilkerson has pled sufficient plausible facts to establish that it has standing to pursue this declaratory judgment action and that the Court should exercise jurisdiction over it.  Wilkerson also timely filed this action.  Therefore, the Court will direct the Clerk to correct Zurich's name on the Court's docket, but will deny the Second Motion to Dismiss on this basis as well.

## IV. Conclusion

For the foregoing reasons, the Court will deny the Second Motion to Dismiss.  The Court will direct the Clerk to correct Zurich's name on the Court's docket.  The Court will also order Zurich to respond to the Amended Complaint in accordance with the Federal Rules of Civil

---

[17] The Court notes that although Zurich raised this ground in the First Motion to Dismiss, Zurich refers to itself as "American Zurich Insurance Company," the name specified in the Amended Complaint, in the Second Motion to Dismiss, (see Second Mot. Dismiss 1), and the Memorandum in Support of the Second Motion to Dismiss, (Mem. Supp. Second Mot. Dismiss 1).

Procedure and the Local Rules for the United States District Court for the Eastern District of

Virginia.

An appropriate order shall issue.

_____
/s/
M. Hannah Lauck
United States District Judge

Date: 7/23/2020
Richmond, Virginia